## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULETTE T. GLOVER and JOHN T. WAREHIME, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, <br><br> *Defendants*. | **No. 3:16-cv-00827 (MPS)** |

## RULING ON MOTION FOR PRELIMINARY APPROVAL, MOTION TO INTERVENE, AND MOTION TO SEAL

This case, involving an alleged breach of life insurance policy provisions governing "cost of insurance" deductions from the investment portion of the policy, has been pending for over eight years. With the defendants' consent, the plaintiffs now seek an order preliminarily approving a proposed class action settlement and permitting issuance of notice to the settlement class. But three members of the proposed class, Vida Longevity Fund, LP, TVPX ARS Inc., and Jean Heckman (the "Objectors"), oppose the settlement and have filed a motion to intervene.  All three Objectors are court-appointed class representatives or proposed class representatives in other federal lawsuits involving life insurance policies that were either issued or administered by Defendant Lincoln National Life Insurance Company: *TVPX ARS Inc. v. Lincoln Life Insurance Co.*, No. 2:18-cv-02989-RBS (E.D. Pa.) ("*TVPX*"), *Iwanski v. First Penn-Pacific Life Insurance Co.*, No. 2:18-cv-01573-RBS (E.D. Pa.) ("*Iwanski*"), and *Vida Longevity Fund, LP v. Lincoln Life & Annuity Company of New York*, No. 1:19-cv-06004-ALC-VF (S.D.N.Y.) ("*Vida Longevity Fund*").

The Court assumes familiarity with the parties' submissions, the July 30, 2024 oral argument, and the record. For the reasons set forth below, I deny the motion to intervene as moot and grant the motion for preliminary approval of the settlement.  I also deny without prejudice the Objectors' motion to seal their opposition memorandum and exhibits.

## I.  MOTION TO INTERVENE

The Objectors have filed a motion to intervene, ECF No. 254, which notes that the Objectors have "standing to object to preliminary approval of the proposed settlement even *absent* intervention," because they are "members of the proposed . . . settlement class." ECF No. 254 at 6. At oral argument the parties agreed that the Objectors have standing to object to preliminary approval. ECF No. 288 at 6; *see also* ECF No. 254 at 6 (noting that "Lincoln agreed on a meet-and-confer . . . that proposed intervenors have standing to object . . . .). Because the Objectors do not need to intervene in this lawsuit to object to preliminary approval of the settlement, the motion to intervene is denied as moot.

## II. MOTION FOR PRELIMINARY APPROVAL

The plaintiffs have moved for preliminary approval of a proposed settlement between the defendants and the following class of plaintiffs:

> All persons who own or owned a life insurance policy, that was active on or after May 27, 2010, and was issued or administered by either Defendant, or their predecessors in interest, the terms of which provide or provided for: 1) a cost of insurance charge calculated using a rate that is determined based on expectations as to future mortality experience; 2) additional but separate policy charges, deductions, or expenses; 3) an investment, interest-bearing, or savings component; and 4) a death benefit.

ECF No. 226 ¶ 5.

Under Rule 23(e), "[t]he claims, issues, or defenses of . . . [a proposed class] . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." I may give

preliminary approval of the settlement only if I determine that I "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Thus, I must consider whether the proposed settlement is likely "fair, reasonable and adequate" under the factors set forth in Rule 23(e)(2), and "ensure that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b)." *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-CV-01714 (VAB), 2018 WL 1582509, at *4 (D. Conn. Mar. 30, 2018) (internal alterations and quotation marks omitted). Further, under Article III of the Constitution, the class representatives must have "standing to assert both [their] individual claims and the class claims brought on behalf of the putative class*." In re Veon Ltd. Sec. Litig.*, No. 15-CV-08672 (ALC), 2021 WL 930478, at *6 (S.D.N.Y. Mar. 11, 2021).

The Objectors argue that the Court should deny preliminary approval of the proposed class settlement in this case because (1) the plaintiffs lack class standing to raise claims on behalf of the Objectors, (2) the proposed class cannot be certified under Rule 23(a) because the class representatives do not have typical claims and are not adequate representatives of the proposed class, (3) the proposed settlement is unfair, unreasonable, and inadequate, and (4) the proposed notice would be confusing to members of the already-certified class in the *Vida Longevity Fund* litigation in the Southern District of New York. For the reasons explained below, I disagree and grant the motion for preliminary approval of the class.

### A. Class Standing

The Objectors argue that Plaintiff Paulette Glover "does not have class standing to assert claims against Lincoln products, given that Glover only owns a Connecticut general policy." ECF No. 256 at 36. And they claim that Plaintiff John Warehime was not properly added to this case because the amendment naming him as a plaintiff was filed after the amendment deadline in the

scheduling order.  Therefore, they assert, "class standing should be evaluated only for Glover." *Id.* at 36-37.

As a preliminary matter, I agree with the Objectors that the plaintiffs could not amend their complaint to add Warehime without good cause. The Court notified the parties that "[a]ny amendments to the Complaint [were] due by November 20, 2023." ECF No. 221. On March 8, 2024, the plaintiffs filed their amended complaint with the consent of the defendants but without seeking leave of Court. ECF No. 226. "[T]he Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Thus, the plaintiffs could amend their complaint to add Warehime "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

I nevertheless give the plaintiffs leave, *nunc pro tunc*, to file their amended complaint, because I find that the amendment is supported by good cause. Adding Warehime will facilitate resolution of this action through class settlement and thereby spare the parties time and expense. So I consider Warehime's claims in evaluating whether the named plaintiffs have Article III standing to assert claims on behalf of the entire class.

"[I]n a putative class action, a plaintiff has class standing if he [or she] plausibly alleges (1) that he [or she] personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal citations, quotation marks, and alterations omitted). In evaluating class standing, "[t]he core question is whether a plaintiff who has a personal stake in proving her own

claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 163 (2d Cir. 2014). A plaintiff has the requisite stake in proving other related claims when the absent class members' claims are "similar to those of the named plaintiff in all essential respects" such that "the proof contemplated for all of the claims," both individual and class, "would be sufficiently similar." *Id.* at 161.

Glover and Warehime seek to represent a class of persons who owned policies "issued or administered by" Defendants Connecticut General Life Insurance Co. ("Connecticut General") or Lincoln National Life Insurance Co. ("Lincoln National"). ECF No. 227 ¶ 5. Glover's policy was issued by Connecticut General, while Warehime's policy was issued by Lincoln National; both policies are administered by Lincoln National.

The Objectors do not dispute that Glover has standing to represent individuals with policies issued by Connecticut General or that Warehime (if properly added to this case) has standing to represent individuals with policies issued by Lincoln National, including the class members in *TVPX*. Instead, the Objectors point out that many of the members of the proposed class have insurance policies that were not issued by Connecticut General or Lincoln National—for instance, two of the Objectors represent classes of individuals who have policies issued by Lincoln Life & Annuity Company of New York ("LLANY") and First Penn-Pacific Life Insurance Company ("FPP"). They claim that Glover and Warehime do not have standing to represent this group of individuals, which includes the class members in *Iwanski* and *Vida Longevity Fund*.

However, the plaintiffs have submitted substantial evidence that—like Glover's and Warehime's policies—the policies of all members of the proposed class are administered by Lincoln National. Specifically, Beth Desmonds, a Vice President of Lincoln National, LLANY,

and FPP, states in a declaration that LLANY is a "wholly-owned subsidiary of Lincoln National," and Lincoln National and FPP are both "wholly-owned subsidiaries of Lincoln National Corporation (which is sometimes referred to using the trade name Lincoln Financial Group)." ECF No. 263-6 ¶ 4. She represents that while Lincoln National has 9,796 employees, LLANY only has 4 employees, and FPP has no employees. *Id.* ¶ 6. (She explains that although she is an officer of LLANY and FPP, she is an employee only of Lincoln National. *Id.*) And since "LLANY and FPP do not have the staff required to administer the universal life insurance policies that they issue . . . . they rely on Lincoln National to administer those policies." *Id.* ¶ 7. Lincoln National's responsibilities with respect to LLANY and FPP include designing new products, complying with regulatory guidelines that apply to those products, analyzing cost of insurance ("COI") rates, and developing GAAP mortality rates. *Id.* ¶¶ 12-14; *see also* ECF No. 263-3 (Master Services Agreement between Lincoln National and LLANY); ECF No. 263-5 (Master Services Agreement between Lincoln National and FPP); ECF No. 267-4 at 5 (Master Services Agreement stating that Lincoln National "agreed to perform various administrative services . . . that relate to blocks of life insurance and annuity business acquired by [LLANY]," including "agreements with . . . [Connecticut General]").

These responsibilities place Lincoln National at the center of the allegations in this case and, even though it is not a party, in *Vida Longevity Fund* and *Iwanski* too. *See* ECF No. 226 ¶ 31 (alleging that "Defendants use [factors besides future mortality experience], not authorized by the Policies or Class Policies, when determining monthly cost of insurance rates and charges, including . . . profit objectives and recovery of non-mortality related expenses"); Am. Compl. ¶ 8, *Iwanski*, No. 2:18-cv-01573-RBS (ECF No. 43) (alleging that "First Penn has . . . wrongly 'based' COI rates on factors not permitted by the contract—i.e., factors other than its 'expectations as to

future mortality experience'); Ex. A, *Iwanski*, No. 2:18-cv-01573-RBS (exhibits to Amended Complaint in *Iwanski* listing First Penn-Pacific as "[a] part of Lincoln National Corporation"); *Compl.* ¶¶ 1, 13, *Vida Longevity Fund*, No. 1:19-cv-06004-ALC-VF (ECF No. 1) (alleging that "[LLANY] has violated the terms of the subject policies by failing to base cost of insurance rates on its expectations as to future mortality experience and instead improperly using cost of insurance charges as a way to bolster its profits," and noting that LLANY's parent company is Lincoln National Life Insurance Company).

In short, for both Glover and the class members or prospective class members in *Vida Longevity Fund* and *Iwanski*, it is Lincoln National that has engaged in the conduct that all of the plaintiffs claim is in violation of the relevant contracts. And as noted, Warehime had a policy that was both issued and administered by Lincoln National—as was also the case for the plaintiffs in *TVPX*. *See* Second Am. Complaint ¶ 1, *TVPX*, No. 2:18-cv-02989-RBS (E.D. Pa.) (ECF No. 1). Thus, Glover and Warehime have shown that they and all class members have been "injured" by Lincoln National's administration of the policies. *See, e.g., Lanzillotta v. Gov't Emps. Ins. Co.*, No. 19-CV-01465, 2023 WL 2652265, at *3 (E.D.N.Y. Mar. 25, 2023) (although plaintiff lacked class standing to sue all GEICO entities on basis that all of them used the same software and shared significant resources to subject putative class members to unlawful deductions in coverage, she had standing to sue GEICO General, which was "the entity that administered Plaintiff's claims"). So the proof of Lincoln National's conduct will be "sufficiently similar" for all members of the class, including Glover and Warehime. *Ret. Bd.*, 775 F.3d at 161.[1]

---

[1] Further proof of the similar evidence between the cases comes from the "overwhelming evidence of [the] defendants' liability" that the Objectors claim they have uncovered through discovery in *TVPX*, *Iwanski*, and *Vida Longevity Fund*. ECF No. 256 at 20-22. This evidence also establishes Lincoln National's involvement in administering those policies. *See, e.g.*, ECF No. 256-4 at 2 (AHL Preliminary Pricing Gap Review slides marked "© Lincoln National Corporation"); ECF No. 256-3 (emails from Beth Desmonds, who is an employee of Lincoln National and a Vice President of Lincoln National, LLANY, and FPP).

The cases that the Objectors rely on are distinguishable and do not support a finding that Glover and Warehime lack class standing to represent the proposed class in this case. *See* ECF No. 287 at 5-7 (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012), *Pryce v. Progressive Corp.*, 2022 WL 1085489 (E.D.N.Y. Feb. 17, 2022), and *Lanzillotta*, 2023 WL 2652265).

In *Mahon*, the plaintiff sued three affiliated companies, only one of which sold her insurance and allegedly misled her. 683 F.3d at 61. The entities were "wholly-owned subsidiaries of the same parent company, share[d] resources in Connecticut, coordinated in drafting their premium rate schedules, and operate[d] in the same manner with respect to overcharging Connecticut borrowers in refinance transactions." *Id.* The Second Circuit held that the plaintiff lacked standing to sue the other entities, however, because she "fail[ed] to explain why [her] injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties." *Id.* at 65. Similarly, in *Pryce*, the plaintiff sued three Progressive entities, although her policy had been issued and was administered only by one of them. 2022 WL 1085489 at *9. The court concluded that she lacked class standing to sue the other two entities that were not "involved in administering her particular claim." *Id.*  Although the entity that administered her policy also administered policies for another Progressive entity "using the same formula," that did not suggest that she had "any relationship with" that other entity or that she was injured by its conduct. *Id.*  Finally, in *Lanzillotta*, all the defendants—various GEICO entities—utilized the same improper formula to assess benefits across all NY insurance policies and the claims department for all GEICO entities operated in the same building. But the plaintiff failed to show that any GEICO entity other than GEICO General "handled her insurance claims and correspondingly injured her by reducing her

policy coverage." *Lanzillotta*, 2023 WL 2652265, at *4. In each of these cases, the named plaintiff did not have any particular relationship with at least one of the defendants.

Here, by contrast, the evidence suggests Lincoln National was the only entity involved in administering the life insurance policies at issue, including determining future mortality expectations and COI rates. And it is Lincoln National's conduct in administering these policies that is at issue—not the conduct of the entity issuing the policy, which was essentially a shell corporation with respect to these policies during the relevant years.

For these reasons, I find that Glover and Warehime have standing to bring their claims against Connecticut General and Lincoln National on behalf of all individuals who have policies owned or administered by those defendants.

### B. Class Certification Factors

Next, the Objectors argue that the parties have not shown that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

A party seeking class certification must satisfy each of the requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These prerequisites are referred to as 'numerosity, commonality, typicality, and adequacy of representation.'" *Martinez v. Avantus, LLC*, No. 3:20-CV-01772 (JCH), 2023 WL 112807, at *4 (D. Conn. Jan. 5, 2023) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013)). "In addition to these four explicit conditions, the Second Circuit has

recognized an implied requirement that the class be ascertainable." *Alexander v. Azar*, 370 F. Supp. 3d 302, 325 (D. Conn. 2019). Finally, a party seeking class certification must satisfy one of the subsections of Rule 23(b). Here, the Plaintiffs seek to certify a class under Rule 23(b)(3), which requires them to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The numerosity, commonality, predominance, superiority, and ascertainability requirements are easily met in this case—and the Objectors do not contest the settlement on any of these grounds. There are some 191,000 policy owners in the class, ECF No. 230-5 at 4-5, and so numerosity is satisfied. As to commonality, the policy language at issue—which states that the determination of the COI rates is "based on" future mortality expectations—is essentially the same across the proposed class. And the question of whether the defendants have complied with that language is common to the class. Further, these common issues predominate: the central issue the parties will litigate in this case will be whether the defendants have breached that contract language. There will be individual differences as to damages, based principally on how long class members have had their policies, but those differences are measurable on a class-wide basis, as the proposed distribution formula shows, ECF No. 230 at 36-37. Superiority is also satisfied, as it would be inefficient for policyholders, some of whose damages are very modest, to bring individual actions asserting breach of the same contract language in the same manner, and because different interpretations by courts of the same policy language—already a problem to some degree, as the plaintiffs have shown in their discussion of the litigation risks facing the proposed class—would only proliferate if this litigation was prosecuted in piecemeal fashion.  Finally, the class is

ascertainable, because it is defined objectively and its membership can be determined based on Lincoln National's records.

The Objectors contend, however, that "class certification is not likely here" because (1) Glover's and Warehime's "claims are [not] typical of those at issue in [*TVPX*, *Iwanski*, and *Vida Longevity Fund*]," and (2) Glover and Warehime are not adequate representatives. ECF No. 256 at 45-46.

Under Rule 23(a)(3), the claims of the class representatives are typical if "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation and internal quotation marks omitted). To determine whether the class has been adequately represented under Rule 23(a)(4), courts consider whether "[1] [the] plaintiff's interests are antagonistic to the interest of other members of the class and [2] [the] plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "The focus is on uncovering conflicts of interest between named parties and the class they seek to represent." *In re Flag Telecom Holdings*, 574 F.3d at 35 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). To defeat a motion for class certification, a conflict must be "fundamental." *Id.* (citation and internal quotations omitted).

No one disputes that the plaintiffs' attorneys are qualified, nor could they. Plaintiffs' counsel have litigated a large number of cost-of-insurance cases in class actions against insurers throughout the country, and they have achieved several large settlements. *See* ECF No. 230 at 31 n.14 (listing class actions plaintiffs have brought); ECF No. 230-2 (declaration of plaintiffs'

counsel and exhibits documenting plaintiffs' counsel's experience). They have also tried four such cases to verdicts in the classes' favor.  ECF No. 230 at 31.

The Objectors' primary argument is that the claims in this case are "underdeveloped" compared to those in the *TVPX*, *Iwanski*, and *Vida Longevity Fund* actions, because (1) the plaintiffs in this case have not conducted significant discovery and therefore cannot "provide[] sufficient information for the Court to assess the strengths" of the other cases relative to the claims here, and (2) the plaintiffs in this case are hampered by a statute of limitations issue that is absent from the other three cases. ECF No. 255 at 46.

<u>Lack of Information</u>

I disagree with the Objectors' contention that the limited discovery in this case renders the named plaintiffs atypical or inadequate representatives of the members of the class who are part of *TVPX*, *Iwanski¸* and *Vida Longevity Fund*. The parties have commenced discovery in this case. And some of the documents the Objectors have relied on in the *TVPX*, *Iwanski*, and *Vida Longevity Fund* actions are the same documents the plaintiffs have used here, including documents reflecting communications with state regulators about improving future mortality expectations. ECF No. 266 ¶¶ 30-33. So the fact the named plaintiffs have conducted less discovery does not constitute a "fundamental conflict" with those members of the class who are part of the *TVPX*, *Iwanski*, and *Vida Longevity Fund* litigations.

<u>Statute of Limitations</u>

The Objectors also argue that Glover and Warehime's claims are on weaker footing than those of the plaintiffs in the other actions, because "the claims here depend on tolling, and are restricted to the 'early years of the policy'" while the "claims in the [*TVPX*, *Iwanski¸* and *Vida Longevity Fund*] cases do not." ECF No. 256 at 46.

While some of the claims in this case depend on tolling, a point I address specifically below, I conclude that the core claim here about the key policy language faces the same challenges that the similar claims in those other three cases face.  The summary judgment ruling in the *Vida Longevity Fund* action appears to parallel the rulings Judge Chatigny (to whom this case was previously assigned) and I made concerning the key policy language, which requires that COI rates be "based on expectations as to future mortality experience." In the *Vida Longevity Fund* ruling, Judge Carter concluded that the contract required LLANY to make expected future mortality experience "the main or a significant ingredient" in its calculations of COI, but not the "exclusive" variable considered. *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, No. 19-CV-06004 (ALC), 2024 WL 1349221, at *4-5 (S.D.N.Y. Mar. 29, 2024). He held LLANY "would be liable [for breach of contract] where the decrease in their mortality rate assumptions were so significant that the lack of a corresponding decrease in COI rate determinations would cause the Class Policy terms to ring hollow." *Id.* at *5.

Similarly, in this case, Judge Chatigny and I have held that that the defendants' mortality expectations "need only be 'key components' of the [COI] calculation; the language of the policies did 'not imply exclusivity.'" ECF No. 189 at 2 (quoting transcript of Judge Chatigny's oral granting of motion to dismiss). While my ruling granting the plaintiffs leave to amend relied more on quantitative considerations—because of the way the issues were framed by the parties—Judge Carter's ruling is susceptible to the same quantitative approach, i.e., the possibility that the plaintiffs might not have a claim with respect to any policy year in which future mortality expectations comprised more than 50 percent of the COI. Plus, I did not foreclose the plaintiffs' claim based on improving mortality expectations, which is the same claim on which the Objectors will proceed to trial in *Vida Longevity Fund*. *See* ECF No. 189 at 29 (permitting Count III of the

amended complaint, which alleged that the defendants failed to lower COI as mortality expectations improved, to "proceed for further factual development").

It is true that were I to adopt the quantitative approach as the *sine qua non* of the breach of contract claim, then the plaintiffs' improving mortality expectations claim in Count III would fail for all years within the statute of limitations. The plaintiffs admit that the future mortality expectations were at least 50 percent of COI for each of those years. *See* ECF No. 227 ¶ 38. But as noted, Judge Carter's ruling is susceptible to a similar reading, although it does not address how to quantify what "based on" means. Further, in the final analysis, the quantitative considerations are simply a piece of evidence relevant to determining whether future mortality expectations are the "main or significant ingredient" of COI. As I observed in my prior ruling, if future mortality expectations compromise more than 50 percent of the COI, it is difficult to see how they would not be the "main or significant ingredient" of COI. And this circumstance may present an obstacle for the *Vida* plaintiffs too: Lincoln has submitted evidence that the class members in *Vida* will need to overcome an argument that the future mortality expectations were at least 50 percent of COI for over 99 percent of the period covered by their claims. *See* ECF No. 263-9 ¶¶ 8-10.  Perhaps a jury could find that Lincoln nonetheless breached the "based on" requirement during these years if there is evidence showing that, no matter how dramatic and consistent the improvements to mortality expectations, those improvements had no impact on COI; but in any event, it appears that the Objectors are in the same boat as the named plaintiffs in this case: for the period within the statute of limitations, the claim asserting a failure to adjust the COI to reflect improving future mortality expectations will likely fail if the court or the jury relies primarily on the quantitative evidence described above.

To be sure, the proposed class here also includes individuals with claims falling outside the statute of limitations, while the class in *Vida* and the proposed classes in the other two actions do not. This means that some class members in this case will have to overcome an additional obstacle—tolling—to survive. But the presence of this additional hurdle for some class members does not erase the interest Glover and Warehime share with all class members in prevailing on the same core argument: that the failure to adjust COI rates as future mortality expectations improved breached the contractual requirement that COI be "based on" future mortality expectations. As shown, that core argument suffers from the same vulnerabilities quite apart from the statute of limitations. So, the existence of another difficulty in proving additional claims outside the statute of limitations in this case (claims not asserted by the Objectors) does not make the plaintiffs atypical or inadequate class representatives.

Privity

Though the Objectors have not raised this issue in their opposition brief, I also address whether the uncertainty about whether Glover is in privity with Lincoln National affects her adequacy as a class representative or the typicality of her claims.

Some proposed class members are differently situated from others because some class members' policies are both administered and issued by Lincoln National, while others' policies are administered but not issued by Lincoln National. Glover may or may not fall in the second category: in my ruling on the motion to amend, I determined that although her policy was not issued by Lincoln National, she had alleged enough facts to support a plausible claim that she was in privity with Lincoln National. But I have not assessed the evidence supporting that claim.

Even if she is not in privity with Lincoln National, however, Glover and others might be able to maintain breach of contract claims against Lincoln National under several theories. For

instance, they could argue that Lincoln National "caused" Connecticut General, LLANY, or FPP to breach their contracts, because it was Lincoln National personnel who failed to adjust the COI in response to improvements in mortality expectations. *See Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*, 2008 WL 905188, at *6 (E.D.N.Y. 2008) (finding sufficient allegations of liability on veil-piercing theory where parent allegedly caused subsidiary to breach contract and breach was in parent's interest); *cf. Carver v. City of New York*, 621 F.3d 221, 226 (finding plaintiff had standing to sue party that "indirectly caused" his injury). Or the plaintiffs could argue that, through its administration of the policies, Lincoln was a joint venturer with Connecticut General, LLANY, or FPP. *Uhlmeyer v. USAA Casualty Ins. Co.*, 2020 WL 732950 *3 (D. Nev. Feb. 13, 2020) (under Nevada law, where insurer jointly administered but was not party to policy, it could be held liable where it engaged in joint venture with party to policy). And as the administrator of the policy, Lincoln could face liability on other theories, such as tortious interference. Finally, as the plaintiffs point out, other courts have certified classes of policyholders bringing contract claims against insurers who "issued or administered" the policies, in cases involving similar facts. *See Edleson v. Travel Insured Int'l, Inc.*, 2023 WL 8251336 (S.D. Cal. Nov. 20, 2023); *Fine v. Kansas City Life Ins. Co.*, 2023 WL 7393027 (C.D. Cal. Nov. 6, 2023).

In any event, with regard to privity, Glover is in the same boat as other class members who have policies administered but not issued by Lincoln. So her claims are likely typical and she is an adequate representative of these class members. And to the extent there is doubt as to whether Glover can adequately represent those class members who have policies both administered and issued by Lincoln, Warehime undoubtedly can. Therefore, I find it is likely that I can certify a class in this case.

### C. Fairness, Reasonableness, and Adequacy of the Proposed Settlement

Rule 23 sets forth procedural and substantive factors that courts must consider when determining whether a settlement is fair and reasonable. The procedural factors are whether "(A) the class representatives and class counsel have adequately represented the class" and "(B) the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2). The substantive factors are whether:

> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.*[2]

The Objectors argue that the settlement was procedurally flawed. When the parties reached a settlement, they argue, Glover was in a weak negotiating position because the Court had stayed discovery on most issues to allow the parties to focus on whether Glover was in privity with Lincoln National and whether her claims were barred by the statute of limitations, and because she lacked class standing to raise her claims. And they contend that the settlement is substantively unfair, both because the overall amount is too low, and because the settlement does not differentiate

---

[2]  Rule 23(e)(2)'s substantive factors, which were added in a 2018 amendment, "do[] not displace [the Second Circuit's] traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (directing courts to consider "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" (internal citations omitted)). Instead, "the rule now mandates courts to evaluate factors that may not have been highlighted in [the Circuit's] prior case law," although the Rule 23 factors "largely overlap" with the "factors outlined in *Grinnell*." *Moses*, 79 F.4th at 243-44.

between those with the strongest claims—the members of the *TVPX*, *Iwanski*, and *Vida Longevity Fund* classes or proposed classes—and the rest of the class members.

<u>Procedural Fairness</u>

It is likely that I will be able to find that (1) the "the class representatives and class counsel have adequately represented the class" and (2) "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2).

Contrary to the Objectors' claims, the evidence does not suggest that the settlement was the result of collusion. The negotiation was conducted in the presence of an experienced mediator. *See* ECF No. 267-1 (declaration of mediator); *see, e.g.*, *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023) ("That the negotiations included active participation by an experienced mediator supports finding that the Settlement is procedurally fair."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) ("The involvement of Ruth D. Raisfeld, Esq., an experienced and well-known employment and class action mediator, is . . . a strong indicator of procedural fairness."). And while the discovery in this case was not extensive, the litigation was hard fought up until settlement.

Further, there is no evidence of a reverse auction, i.e., a scenario where "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002). Indeed, the factors that led the Seventh Circuit in *Reynolds* to reverse the district court's ruling granting partial approval of a settlement are largely absent here. In *Reynolds*, among other issues, lawyers who had represented plaintiffs in other similar actions that had since been dismissed began global settlement discussions with defense counsel even though they had no pending case against the

defendant, it was "doubtful whether [the attorneys] even had a client," *id.* at 280, and the settlement provided for reversion of funds to the defendant, *id* at 283. By contrast, this case was filed years before *TVPX*, *Iwanski*, and *Vida Longevity Fund* by attorneys who have ample experience litigating similar claims, and the settlement does not provide for reversion.

While Warehime was added as a plaintiff after settlement negotiations began, this case was filed long before objectors filed their cases, and plaintiffs' counsel represents that Warehime is a long-time client: he contacted plaintiffs' counsel in 2017 and executed a representation agreement at that point. ECF No. 266 ¶ 29.  And it is not uncommon for defendants to consent to an amended complaint to facilitate a settlement.  Nor is this a scenario where the parties used an amended complaint to dramatically "expand[] the class definition." *Claridge v. N. Am. Power & Gas, LLC*, No. 15-CV-1261 (PKC), 2017 WL 3638455, at *1 (S.D.N.Y. Aug. 23, 2017). Instead, the amended complaint that the defendants consented to has a slightly narrower class definition than the original complaint; the former limits the class to individuals with policies active on or after May 27, 2010. *Compare* ECF No. 226 ¶ 5 *with* ECF No. 1 ¶ 5. So I find the proposed settlement is procedurally fair.

Substantive Fairness

I also find that it is likely that (1) "the relief provided for the class is adequate" and (2) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

First, the relief provided is adequate given the costs, risks, and delay involved in trial and appeals. As Connecticut General and Lincoln National pointed out in their reply briefs and at oral argument, there is significant uncertainty both about the meaning of the "based on" language in the policies, and about how courts and juries will apply that language to the facts of each case. Different courts have reached different conclusions on these issues across the country, and the

Court of Appeals for the Second Circuit has not yet weighed in on the policy language at issue in a similar case.  Further, decisions by district courts within the Second Circuit, including mine, do not make it easy for the proposed class members to prevail.  And as noted, according to Judge Carter's summary judgment ruling, the *Vida Longevity Fund* class must show that the "the decrease in [the class's] mortality rate assumptions were so significant that the lack of a corresponding decrease in COI rate determinations would cause the Class Policy terms to ring hollow." *Vida Longevity Fund*, 2024 WL 1349221, at *5. Meeting this standard may prove an uphill battle for all claims within the statute of limitations: based on Lincoln's submissions, these class members will need to overcome an argument that the future mortality expectations were at least 50 percent of COI for over 99 percent of that time period. *See* ECF No. 263-9 ¶¶ 8-10. It is reasonable for the defendants in this case and in *Vida* to discount the chances they will face a substantial judgment based on rulings of this Court and the Southern District to date.  And in the two cases outside the Second Circuit, *Iwanski* and *TVPX*—which both have pending motions for summary judgment— it remains unclear how the court will interpret the "based on" language or how it might evaluate this quantitative evidence.  Finally, the settlement provides relief for twenty-two *Vida Longevity Fund* policyholders who would otherwise receive no compensation, and for claims from outside the statute of limitations period. For these same reasons, I also find that the settlement is fair, reasonable, and adequate under the *Grinnell* factors, particularly "the complexity, expense and likely duration of the litigation," "the risks of establishing liability," "the risks of establishing damages," and "the range of reasonableness of the settlement fund in light of the best possible recovery [and] . . . all the attendant risks of litigation." *Grinnell Corp.*, 495 F.2d at 463.

As to "the effectiveness of any proposed method of distributing relief to the class," Fed. R. Civ. P. 23(e)(2)(C)(ii), the Objectors have not argued that the distribution method is ineffective.

And the fact the distribution method does not require a claims process is an advantage for class members.

I have also reviewed the "terms of [the] proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). I find that the terms of the attorney's fee award favors approval of the settlement because approval of fees is independent of approval of the settlement, and there is no reversion to the defendants if the Court does not approve fees. As to other agreements, Fed. R. Civ. P. 23(e)(2)(C)(iv), I note that there is a side agreement that apparently allows Lincoln National to cancel the settlement if the number of opt outs exceeds a particular threshold. I will require the filing of this agreement under seal, and will review it, before I grant final approval.

Finally, I find that the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). As the Objectors point out, some plaintiffs face statute of limitations issues with respect to portions of their claims, while others do not. But, as noted, it is likely that all class members will face an uphill battle for claims *within* the statute of limitations. The fact that some plaintiffs, like Glover, are also asserting claims outside the statute of limitations—for which they may have even slimmer chances of success—does not make the treatment of class members so uneven that the settlement should be rejected. The same principle applies to class members who are in undisputed privity with the defendants and class members who are not. While the latter have some additional hurdles to clear, all the class members still face the shared, and likely substantial, challenge that lies at the core of their case, i.e, showing that

future mortality expectations were not a "main or significant ingredient" in the COI for years when it comprised more than 50 percent of the COI by value.

*** 

For these reasons, I grant the motion for preliminary approval of the settlement.

### D. Additional Findings

I make the following additional findings regarding the proposed settlement[3]:

1. **<u>Giving Notice of the Settlement to the Class is Justified</u>**. The parties have shown that the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

2. **<u>Class counsel</u>**. The Court finds that plaintiff's counsel, Stueve Siegel Hanson LLP and Schirger Feierabend LLC, are competent, experienced, and qualified to represent the proposed Settlement Class and therefore appoints these counsel as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

3. **<u>Settlement Administrator.</u>** The Court appoints Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator, with responsibility for Class Notice and claims administration.

4. **<u>Notice.</u>** The proposed Class Notice program set forth in the Agreement and the declaration of Cameron R. Azari of Epiq, (ECF No. 230-4) and the Class Notice attached to the Agreement as Exhibit A, are hereby approved, provided that the parties make the revisions specified in Paragraph 12d below. Non-material modifications to the Class Notice may be made without further order of the Court.

---

[3] All defined terms in this order have the same meanings ascribed to them in the Agreement.

The Court finds that the proposed form, content, and method of giving Class Notice (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise putative Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including their rights to object to or exclude themselves from the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to all putative Settlement Class Members; and (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c) and (e), and the Due Process Clause of the United States Constitution. The Court further finds that the Class Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by the putative Settlement Class Members.

The Settlement Administrator and the Parties are directed to carry out the Class Notice provisions of Section 4 of the Agreement.

5. **Exclusion from Class.** Any class member who wishes to be excluded from the Settlement Class must mail a written notification of the intent to exclude herself or himself from the Settlement Class to the Settlement Administrator at the address and in the manner provided in the Class Notice. Requests for exclusion must meet the opt-out deadline established by this Order and stated in the Court-approved Class Notice.

6. **Injunction on Related Proceedings.** The Court is willing to approve the provision (Settlement Agreement § 10.2) enjoining class members who do not opt out from continuing to prosecute other actions only if the notice is amended specifically (1) to advise class members of *Vida Longevity Fund*, as well as class members whose policies were issued by LLANY and FPP, that unless they opt out, they will be prevented from participating in those

actions, and (2) to advise the prospective class members in *Iwanski*, whose policies were issued by Lincoln National, that they will be unable to proceed in that case unless they opt out.  The notice must also advise class members of the fact that the Court in the Southern District of New York denied, in part, summary judgment in the *Vida Longevity Fund* action, but also that the Court has stayed the action while this Court decides whether to give final approval to the settlement. Once proof that a notice complying with the Settlement Agreement and this ruling has been filed on the docket along with a satisfactory proposed injunctive order, the Court will sign and issue the order.

7. **<u>Class Action Fairness Act Notice.</u>** Within 10 days after the filing of the motion for preliminary approval and to permit issuance of notice, Lincoln National was required to serve or cause to be served a notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). Lincoln National shall file proof that it served notice on the required parties by that deadline within 10 days of this order.

8. **<u>Fairness Hearing.</u>** A Fairness Hearing will be held on December 16, 2024 at 10:00 am, at the United States District Court for the District of Connecticut, 450 Main Street, Courtroom 3, Hartford, Connecticut, to determine, among other things, whether: (a) this matter should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (b) the Settlement should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) this case should be dismissed with prejudice under the terms of the Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Agreement; (e) the application for Class Counsel's Fees and

Expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (f) the application for Plaintiffs' Service Awards should be approved.

9. **<u>Objections and Appearances.</u>** Any Settlement Class Member may appear and explain why the proposed Settlement of this case should or should not be approved as fair, reasonable, and adequate, why a judgment should or should not be entered, why Class Counsel's Fees and Expenses should or should not be awarded, or why Plaintiffs' Service Awards should or should not be awarded; provided, however, that no Settlement Class Member or any other person shall be heard or entitled to contest such matters unless he or she has complied with the deadline established by this Order and the requirements for objections set forth in the Court-approved Class Notice. Any Settlement Class Member who does not make his or her objection in the manner provided shall be deemed to have waived any objection and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed Settlement, or to the award of Class Counsel's Fees and Expenses or Plaintiffs' Service Awards, unless otherwise ordered by the Court.

10. **<u>Continuance of Hearing.</u>** The Court reserves the right to adjourn or continue the Fairness Hearing and related deadlines without further mailed notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

11. **<u>Schedule and Deadlines.</u>** The Court orders the following schedule for the specified actions and further proceedings.

| EVENT | TIMING |
|---|---|
| Deadline for dissemination of CAFA notices by Lincoln National or Settlement Administrator | March 16, 2024[4] |
| Deadline for Lincoln National to provide Notice List to Settlement Administrator | September 26, 2024 |
| Deadline for the Settlement Administrator to mail Court-approved Notice to Settlement Class ("Notice Date") | October 19, 2024 |
| Deadline to file Plaintiffs' counsel's motion for Fees and Expenses and for Service Awards | November 2, 2024 |
| Deadline for motion for final approval of Settlement | December 9, 2024 |
| Objection deadline | November 23, 2024 |
| Opt-out deadline | November 23, 2024 |
| Deadline for Plaintiffs' counsel to file with the Court all objections served on the Settlement Administrator | December 6, 2024 |
| Deadline for responses to any timely objections | December 9, 2024 |
| Fairness Hearing | December 16, 2024 at 10:00 am |

12. **Additional Requirements.** The Court also orders as follows:

12.a.    Plaintiffs' counsel must obtain an estimate from the Settlement Administrator as to what its fees and expenses of administration will be and file the estimate on the docket within **30 days** of this order granting preliminary approval.

12.b.    Plaintiffs' counsel must specify in its memo seeking final approval the total number of service awards of $50,000 it is seeking, so that the Court can ascertain the degree to which such awards will deplete the Settlement Fund.  Further, to the extent there are significant differences in the amount of time and effort invested by

---

[4] As noted, this deadline has already passed, and Lincoln National must file proof that it has disseminated the required CAFA notices by September 14, 2024.

those proposed to receive service awards, the plaintiffs shall describe such differences in the memo supporting the motion seeking final approval.

12.c.     The parties must file the side agreement that gives Lincoln the option to cancel the settlement if the number of opt outs exceeds a certain threshold. *See* Settlement Agreement § 5.7. They may file that agreement under seal. The parties must also file any other side agreements related in any way to the proposed class settlement. All these filings must be made within **30 days** of this order granting preliminary approval.

12.d.     The parties must make the following revisions to the Notice:

12.d.i.     ECF No. 230-1 at 35: the first line of the last paragraph should say "Cost of Insurance that was deducted" or "Costs of Insurance that were deducted".

12.d.ii.     Other Necessary Revisions

12.d.ii.1.   ECF No. 230-1 at 37: the second sentence of the second paragraph under "What is this lawsuit about?" should say "The Policies say that", not "The Policies says that". In that same paragraph, the last sentence should be changed to "but Defendants failed to do so."

12.d.ii.2.   ECF No. 230-1 at 39: the third paragraph under "What happens if I do nothing?", which says "If your Policy is still in force, Defendants may continue to use their current Cost of Insurance Rates," should be in **boldface** font.

12.d.ii.3.   ECF No. 230-1 at 41: in the first sentence of the second paragraph under "When and where will the Court decide whether to approve the Settlement?", the parties should delete "Annex 135" from the address.

## I.  MOTION TO SEAL

In addition, I deny without prejudice the Objectors' motion to seal portions of their opposition brief and exhibits. ECF No. 257. "The party seeking to file a document under seal bears the burden of demonstrating that sealing is warranted." *Collado v. City of N.Y.*, 193 F. Supp. 3d 286, 289 (S.D.N.Y. 2016). The Objectors' motion says only that the brief and exhibits "reference materials that the defendants in [*TVPX*, *Iwanski*, *Vida Longevity Fund*] designated as 'Confidential' under the confidentiality agreements and protective orders in those cases," and the Objectors have therefore filed those documents under seal "as a matter of precaution." ECF No. 257 at 2. This explanation is insufficient to justify continued sealing under Second Circuit standards, particularly where the sealed information could assist members of the class in deciding whether to opt out of the class settlement.

Therefore, within thirty days of this order, either (1) the Objectors must file an unredacted version of their opposition to preliminary approval and exhibits, or (2) the Objectors or one of the parties may file any renewed motion to seal, which must "explicitly describe the grounds that would warrant the Court's sealing of any information, showing why sealing is supported by clear and compelling reasons and how the proposed extent of sealing is narrowly tailored to serve those reasons," *United States v. Roy*, No. 3:15-CR-00151 (JAM), 2017 WL 2604250, at *3 (D. Conn. June 15, 2017).

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.
September 4, 2024