UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULETTE T GLOVER, on her own behalf and on behalf of all others similarly situated,<br><br> *Plaintiffs*,<br><br> v.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY, LINCOLN NATIONAL LIFE INSURANCE CO.,<br><br> *Defendants*. | No. 3:16-cv-00827-MPS |

**RULING ON DISCOVERY DISPUTE BETWEEN
OBJECTORS, CLASS COUNSEL, AND DEFENDANTS**

 The parties in this class action alleging breach of life insurance policy provisions governing calculation of the "cost of insurance" reached a proposed class settlement earlier this year. I preliminarily approved the proposed settlement, and a final fairness hearing is scheduled for December. *See* Fed. R. Civ. P. 23(e). Late last week, I received correspondence regarding a discovery dispute between, on the one hand, the named parties and, on the other, objectors to the proposed class settlement. I attach the correspondence as Exhibit A to this ruling. I assume familiarity with the background and lengthy procedural history of this case and set forth here only so much discussion as is necessary to understand my reasons for denying the objectors' discovery requests.

 **I. Procedural History**

 On March 8, 2024, the plaintiffs filed a motion for preliminary approval of a class settlement and an amended complaint. (ECF Nos. 227, 229.) A few days later, the law firm Susman Godfrey LLP filed a "notice of intent to oppose motion for preliminary approval," noting that it was court-appointed class counsel in a class action against a subsidiary of Defendant Lincoln National Life Insurance Company ("Lincoln") pending in the Southern

1

District of New York and also "court-appointed interim class counsel" in two other related actions against Lincoln and a subsidiary pending in the Eastern District of Pennsylvania. (ECF No. 232.) The firm filed its opposition, on behalf of its clients in those actions, at the end of March. (ECF No. 256.) After reviewing the opposition and responses by the named plaintiffs and the defendants, as well as further filings by all involved, I held oral argument on the motion for preliminary approval on July 30, 2024, hearing from the plaintiffs, the objectors, and the defendants. On September 4, I issued a ruling preliminarily certifying the proposed class, appointing plaintiffs' counsel as class counsel, and granting preliminary approval of the proposed class settlement; I set the fairness hearing for December 16, the objection and opt-out deadline for November 23, and the deadline for the motion for final approval for December 9. (the "Preliminary Approval Ruling," ECF No. 289; *Glover v. Conn. Gen. Life Ins. Co.*, No. 16-cv-827, 2024 WL 4036721 (D. Conn. Sept. 4, 2024).)

## II.     Objectors' Discovery Requests

On September 23, Objectors' counsel wrote to counsel for the class and the defendants, seeking, "within one week," the following broad categories of discovery: (1) "all documents produced by defendants" in this litigation, (2) "all documents relating to the administration of the policies covered by the proposed settlement," (3) "[a]ll documents relating to the supposed 'shell' status of any companies whose policies are subject to the proposed settlement," (4) "[t]he documents on which [class counsel's expert]" relied to perform a calculation submitted by class counsel with their reply brief supporting the proposed settlement, (5) "all other policy-level data," (6) "all written discovery exchanged between the parties," (7) the employment agreement and W-2 statement of a Lincoln employee who had submitted an affidavit in support of the settlement, (8) documents showing the employment of officers and directors of the Lincoln

subsidiary that was the named defendant in the Southern District case, (9) documents showing the number of employees of each insurer whose policies are subject to the proposed settlement, (10) a copy of Lincoln's "board-approved criteria," (11) copies of service agreements between various Lincoln entities, (12) all settlement communications between class counsel and defense counsel, (13) certain side agreements to agreements already filed on the docket, (14) certain disclosures to insurance regulators, and (15) documents that Lincoln contended showed its administration of policies in the related litigations pending in other districts before certain dates and its administration of Connecticut General policies before 1998. The objectors also sought a 3-hour deposition of the Lincoln employee who had submitted the affidavit in support of the settlement. *See* Exhibit A.

### III.   Discussion

I do not find that the objectors' sweeping requests are genuinely likely to yield information that will help me determine whether the proposed settlement is fair, reasonable, and adequate, for the reasons set forth below.

First, the objectors already have a great deal of information about this case and the related cases, all of which, as described in the Preliminary Approval Ruling, make similar claims and face similar obstacles to success. In advance of the hearing on the motion for preliminary approval, the objectors submitted a 50-page opposition brief setting forth their arguments against the proposed settlement, together with another 66 pages of supporting exhibits. In their brief, the objectors were at pains to point out that, in their related cases, one against Lincoln (one of the two defendants in this case) and the other two against Lincoln subsidiaries, they had obtained voluminous discovery on claims that are closely related to those being asserted in this action, including "740,000 pages of documents produced by [the Lincoln entities]," "9,500

spreadsheets," and "22 depositions." ECF No. 256 at 9, 10.  And while the objectors did urge me "at least [to] order discovery into" what they called the "reverse-auction settlement negotiations" and "to evaluate the parties' settlement negotiations," *id.* at 15, 40, they never suggested – in their brief or at the July 30 hearing – that I should order the fulsome discovery they are now seeking, much less that they lacked sufficient information to offer their detailed views on whether the settlement was fair and reasonable.  To the contrary, their position appeared to be that, because they had conducted far more extensive discovery in the three cases pending in other districts, they were in a better position than class counsel, defense counsel, or me to assess the fairness and reasonableness of the proposed settlement.  At the July 30 hearing – at which I listened to more than two hours of argument from all sides – the objectors (along with class counsel and the defendants) also presented a lengthy series of PowerPoint slides – again, hardly suggestive of a dearth of information on their part.  Further, at the hearing, objectors' counsel did not reiterate even the cursory discovery request made in his brief; nor did he make any suggestion that he was at any disadvantage in presenting his arguments.  In short, the objectors in this case have "a great deal of sophistication and familiarity with . . . the terms of the Settlement Agreement" and the circumstances of the case, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 5-md-1720, 2012 WL 5989763, at *1 (E.D.N.Y. Oct. 24, 2012) (denying discovery by objectors who had "a great deal of sophistication and familiarity with both the terms of the Settlement Agreement and the course of the negotiations that culminated in that agreement"), and they have had "a full opportunity" – indeed, a great deal more than most class objectors ever receive – "to develop the basis for [their] objection[s]," *Charron v. Wiener*, 731 F.3d 241, 248 (2d Cir. 2013) (noting that objectors "have no automatic right to discovery or an evidentiary hearing in order to substantiate their objections").  It is not

necessary to afford them even more information to enable them to make well-informed arguments opposing the settlement.

Second, the objectors have offered relatively little reasoning in their discovery letter as to why they require such broad discovery to enable them to assist me in evaluating the fairness and reasonableness of the settlement. Some of the proposed discovery appears to be aimed at exploring whether Lincoln genuinely administers the class policies and at testing my conclusion, made after reviewing evidence submitted by Lincoln at the preliminary approval stage, that "for both Glover and the class members or prospective class members in [two of the actions pending outside this District], it is Lincoln . . . that has engaged in the conduct that all of the plaintiffs claim is in violation of the relevant contracts." Preliminary Approval Ruling, ECF No. 289 at 7. This conclusion contributed to my finding that the plaintiffs in this action had "class standing" to represent the proposed class – an issue often decided on the pleadings, without any discovery. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) (leading Second Circuit class standing case deciding issue on appeal of ruling on motion to dismiss); *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014) (same). I did not rely on Lincoln's administration of the class policies, however, in assessing the procedural and substantive fairness of the settlement, *see* ECF No. 289 at 18–22, which should be the focus of any objector discovery a court weighing a proposed settlement might permit. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001) ("[T]he Court may in its discretion allow discovery if it will help the Court determine whether the settlement is fair, reasonable, and adequate."). Lincoln's administration (or not) of the policies was not central to the fairness analysis because, as discussed in the Preliminary Approval Ruling, the fairness of the proposed settlement in this case

5

turns in large part on legal issues – specifically, the legal uncertainty surrounding the "based on" language in the policies and the similar and substantial obstacles posed to all class members by existing interpretations of that language, including mine and the Southern District's. *See* ECF No. 289 at 19–22. The same point explains why the objectors' emphasis on the differences in the extent of discovery between this case and the three cases pending in other districts does not carry as much weight as it otherwise might. *See also id.* at 12 (addressing discovery differences). The objectors fail to explain how the broad discovery they seek would significantly alter these considerations.

      Third, the objectors have offered zero evidence that the proposed settlement in this case was "collusive," a basis some courts have cited for permitting discovery by objectors. *Lorazepam*, 205 F.R.D. at 28 ("Case law has consistently applied the principle that objectors are not entitled to discovery concerning settlement negotiations between the parties in the absence of evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process."). The objectors argued in their opposition to preliminary approval that "[t]he parties' negotiations here … reek of a reverse auction," ECF No. 256 at 37 – where a defendant facing multiple class actions picks off the least threatening of those actions, negotiates with the weak or ill-prepared plaintiffs' lawyers involved in that action, and tries to wrap up all of the cases in a global settlement on the cheap. But I found that there was no evidence to support the objectors' argument and that the features characteristic of a "reverse auction" were absent. ECF No. 289 at 18. And the objectors' discovery letter does not offer any evidence of collusion either. While I likely have discretion to allow some discovery into settlement negotiations even in the absence of evidence of collusion, I see no reason to permit such discovery here and find the suggestion of "collusion" to be implausible in this case in light of the involvement of a neutral mediator, a

retired federal judge, in the settlement discussions (ECF No. 230 at 10–11), the experience of class counsel in this and similar cases, the overall compensation the proposed settlement would achieve for the class, the objectors' somewhat exaggerated assessment of their own chances of success in the Southern District and the other two cases, and the prominence of legal uncertainty, as discussed above, in the settlement calculus.

      Finally, it is worth remembering that "since the very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination of the merits." *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972. The objectors' broad discovery requests in this case ignore this teaching. Permitting these requests would impose substantial additional time and expense on class counsel and the defendants – effectively defeating one of the benefits of the settlement – and all without any clear prospect of yielding better information with which to assess its fairness.

      For these and the other reasons cited in the letters submitted by class counsel and the defendants (*see* Exhibit A), I decline to allow the broad discovery the objectors seek.

      IT IS SO ORDERED.

      /s/
      Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
      October 29, 2024